1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VOSK INTERNATIONAL CO.,

Plaintiff,

vs.

ZAO GRUPPA PREDPRIYATIJ
OST and ZAO OST AQUA,

Defendants.

Case No.  C11-1488RSL

ORDER VACATING DEFAULT,
DENYING MOTION TO DISMISS

This matter comes before the Court on Defendants' "Motion to Dismiss for Lack
of Jurisdiction" (Dkt. # 15) and "Motion to Set Aside Order Granting Plaintiff's *Ex
Parte* Motion for Leave to Serve Defendants by Alternate Means, Quash Service and
Vacate Default" (Dkt. # 16).[1]  Defendants contend that 15 U.S.C. § 1071(b)(4)
precludes this Court from exercising jurisdiction over Plaintiff's first claim—that the
final decisions of the Trademark Trial and Appeal Board ("TTAB") were unsupported
by substantial evidence.  They further contend that, regardless of § 1071, this Court
lacks personal jurisdiction over each Defendant and that service was not properly
effectuated.  Accordingly, they ask the Court to vacate its entry of default (Dkt. # 14)

---

[1]  The Defendants appeared specially to preserve their objections.

ORDER VACATING DEFAULT, DENYING MOTION TO DISMISS - 1

and dismiss this case for lack of jurisdiction.[2]  Dkt. ## 15, 16.

For the reasons set forth below, the Court GRANTS the motions IN PART.  It VACATES its entry of default but DENIES Defendants' motion to dismiss.

## I. BACKGROUND[3]

Plaintiff is a Washington general partnership doing business in King County, Washington.  Complaint (Dkt. # 1) at ¶ 2.  Since 1997, Plaintiff has been engaged in the business of marketing, distributing, offering for sale, and selling beverages throughout the United States.  Id. at ¶ 2.

Defendant Zao Gruppa Predpriyatij Ost and Defendant Zao Ost Aqua are both Russian companies.  Id. at ¶¶ 3–4.  Defendant Zao Gruppa Predpriyatij Ost owns and operates Defendant Zao Ost Aqua.  Id. at ¶ 3.  Both manufacture, bottle, and sell several popular non-alcoholic drinks in Russia.  Id. at ¶ 11.

On March 18, 2004, Plaintiff contracted with Defendant Zao Ost Aqua to purchase Defendant's "Dushesse, extra-cider, and estragon drinks."  Id. at ¶ 12.  The contract required Defendant to, among other things, alter its formula according to Plaintiff's specifications and to use Plaintiff's English-language labels.  Id.  These labels contained product names and stylized designs created by Plaintiff.  Id.; see id. at ¶ 13.  Plaintiff began importing and selling Defendants' drinks in the United States that summer.  Id. at ¶ 15.

In September 2004, Plaintiff filed applications with the United States Patent and Trade Office ("PTO") to register the names of the three drinks, "KCTPA-CNTP EXTRA-CIDER," "TAPXYH ESTRAGON," and "DIOWEC DUSHESS," and each's

---

[2]  In their Reply (Dkt. # 22), Defendants retract their request to set aside the Court's Order granting Plaintiff's request for leave to serve Defendants' by alternate means (Dkt. # 10). They also retract their request to quash service. Dkt. # 22.  Accordingly, they have waived each argument.  Fed. R. Civ. P 12(h).

[3]  The Court "accepts as true all well-pleaded allegations of material fact, and construe[s] them in the light most favorable to the non-moving party."  Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992. 998 (9th Cir. 2010).

label design as international trademarks.  <u>Id.</u> at ¶¶ 16–17.  The PTO approved each application and published them for opposition.  <u>Id.</u> at ¶ 18.  Defendants filed oppositions to each of the three applications, which the TTAB consolidated for trial.  <u>Id.</u> at ¶¶ 19–21, 23.

On August 9, 2011, the TTAB sided with Defendants, sustaining each of their oppositions.  <u>Id.</u> at ¶ 26.  Plaintiff filed the instant suit 31 days later.  In it, Plaintiff asks this Court to review the TTAB's decision pursuant to 15 U.S.C. § 1071(b), alleging that "the TTAB improperly considered inadmissible evidence that Defendants offered, excluded admissible evidence that [Plaintiff] offered, improperly weighed the evidence it did accept, and erred in applying the law."  <u>Id.</u> at ¶¶ 27–34.  It also adds a false designation of origin claim under 15 U.S.C. § 1125(a), <u>id.</u> at ¶¶ 35–39, and a Washington unfair competition claim under RCW 19.86, <u>id.</u> at ¶¶ 40–44.

## II.  DISCUSSION

To resolve the present motions, the Court considers three questions:  (1) whether § 1071(b)(4) divests this Court of jurisdiction; (2) whether this Court lacks personal jurisdiction over the Defendants; and, (3) whether the Court should vacate its entry of default.  The Court concludes that § 1071(b)(4) does not divest it of jurisdiction to review the decision of the TTAB and that Defendants' many transactions with Plaintiff, a Washington resident, are more than enough to support personal jurisdiction.  It will, however, set aside the entry of default so that the case can be decided on the merits.

**A.  Section 1071(b)(4)'s "Jurisdiction" Provision**

Defendants contend first that § 1071(b)(4) precludes this Court from exercising jurisdiction over Plaintiffs' § 1071(b) claim.  The Court disagrees.

As is relevant to this case, § 1071(b)(4) provides:

> Where there is an adverse party, such suit may be instituted against the party in interest as shown by the records of the United States Patent and Trademark Office at the time of the decision complained of, but any party in interest may become a party to the action.  <u>If there are adverse parties residing in a plurality of districts not</u>

ORDER VACATING DEFAULT, DENYING MOTION TO DISMISS - 3

1

2

embraced within the same State, or an adverse party residing in a foreign country, the United States District Court for the District of Columbia shall have jurisdiction and may issue summons against the adverse parties directed to the marshal of any district in which any adverse party resides. Summons against adverse parties residing in foreign countries may be served by publication or otherwise as the court directs.

3

4

5

§ 1071(b)(4) (emphasis added).[4]

6

Defendants' position is understandable. As some courts have found, the statute

7

could be interpreted as limiting "jurisdiction" over appeals to a single district. E.g.,

8

Del-Viking Prods., Inc. v. Estate of Johnson, Civ. A. No. 93-1831, 1994 WL 413752, at

9

*1 (W.D. Pa. Feb. 10, 1994) ("After considering the motions and briefs filed by both

10

parties and the language of the statute itself, we are persuaded that § 1071(b)(4)

11

mandates that jurisdiction of this claim under the circumstances present in this case

12

properly lies only with the District Court for the District of Columbia."). Not all courts

13

have agreed, however. See, e.g., Bally Gaming, Inc. v. Kappos, 789 F. Supp. 2d 41,

14

43–44 (D.D.C. 2011); Standard Oil Co. v. Montecatini Edison S.p.A., 342 F. Supp.

15

125, 131–33 (D. Del. 1972) ("[The statute] simply provided a supplemental forum in

16

the District of Columbia to a plaintiff in an interference suit when he could not

17

otherwise obtain service of process upon all indispensable defendants in other fora

18

under the general personal jurisdiction and venue statutes."). And because the statute

19

does not unambiguously support either position, the Court must delve into the statute's

20

legislative history. Oklahoma v. New Mexico, 501 U.S. 221, 236 n.5 (1991) ("[W]e

21

repeatedly have looked to legislative history and other extrinsic material when required

22

23

24

25

    [4] Both parties rely in their arguments on the most recently amended version of § 1071, which identifies the United States District Court for the Eastern District of Virginia, and not the District of Columbia, as the jurisdiction of choice. That reliance is incorrect. The amended version of § 1071 applies only to those civil actions commenced on or after the date of the enactment of the authorizing Act—September 16, 2011. Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 9(b), 125 Stat. 284, 316 (Sept. 16, 2011) ("The amendments made by this section shall take effect on the date of the enactment of this Act and shall apply to any civil action commenced on or after that date."). Because Plaintiff commenced this civil action on September 9, 2011, the amendment does not apply. Id.

26

ORDER VACATING DEFAULT, DENYING MOTION TO DISMISS - 4

1   to interpret a statute which is ambiguous[.]").

2         Fortunately, the history in this case makes two relevant points very clear.  First,

3   though the statute speaks in terms of "jurisdiction," it really refers to "venue."  Leahy-

4   Smith America Invents Act, Pub. L. No. 112-29, § 9, 125 Stat. 284, 316 (Sept. 16,

5   2011) (describing the amendment as part of the Act's "TECHNICAL AMENDMENTS

    RELATING TO VENUE").  And second, the statute does not limit venue.  "It was
6
    adopted for the benefit of plaintiffs and not of defendants.  It simply provide[s] a
7
    supplemental forum in the District of Columbia to a plaintiff . . . when he could not
8
    otherwise obtain service of process upon all indispensable defendants in other fora
9
    under the general personal jurisdiction and venue statutes."  Montecatini, 342 F. Supp.
10
    at 132 (discussing 35 U.S.C. § 146); accord Chris Laganas Shoe Co. v. Watson, 221
11
    F.2d 881, 882 (D.C. Cir. 1955) (concluding that the statutory language simply "permits
12
    claims that cannot be enforced elsewhere to be enforced here [in the United States
13
    District Court for the District of Columbia].").

14         To understand this second point, it is necessary to understand that the pertinent

15   "venue" provision of § 1071(b)(4) is not unique.  Congress borrowed the relevant

16   language from 35 U.S.C. § 146 in 1962.[5]  Prior to that, § 1071 had simply incorporated

17   § 146's language entirely by reference.  10 U.S.C. 1071 (1952) ("Any applicant . . .

     who is dissatisfied with the decision of the Commissioner . . . may proceed under
18
     sections 145 and 146 of Title 35 . . . .").
19
           Accordingly, to understand § 1071, this Court must identify the impetus for
20
     § 146.  And, as concisely summarized in Montecatini, § 146's purpose was not to limit
21
     venue, but to aid plaintiffs by providing a supplemental forum for plaintiffs who would
22
     otherwise be left without one:
23
                 Legislative history indicates that the purpose of the
24

25         [5] The language differs in only one respect:  § 146 begins, "If there be adverse parties
     . . . ," while § 1071(b)(4) states, "If there are adverse parties . . . ."
26
     ORDER VACATING DEFAULT, DENYING MOTION TO DISMISS - 5

concluding language of § 146 was to remedy a statutory anomaly. Before 1927, it often occurred that plaintiffs were unable to prosecute interference suits because process could not be served when there were multiple defendants having interests which made them indispensable parties who resided in different states or in foreign countries. . . . [I]t was possible that an inventor, defeated in a patent office interference, would be remediless against his victorious rival, who after receiving a patent removed himself completely from the United States.  The Court agreed that this was so and called it an anomaly under the existing statutory law.  The Court further suggested that, if the defect were to be remedied, it was up to Congress to make the correction.  Congress corrected the defect by the adoption of the Act of March 3, 1927[,] which added the language now found in the concluding portion of § 146.  It was adopted for the benefit of plaintiffs and not of defendants.  It simply provided a supplemental forum in the District of Columbia to a plaintiff in an interference suit when he could not otherwise obtain service of process upon all indispensable defendants in other fora under the general personal jurisdiction and venue statutes.

342 F. Supp. at 132 (discussing <u>Armstrong v. De Forest</u>, 13 F.2d 438 (2d Cir. 1926);

<u>accord</u> <u>E. I. DuPont De Nemours & Co. v. Celanese Corp.</u>, 285 F. Supp. 819, 821

(S.D.N.Y. 1968) ("This salutary scheme was devised in 1927 to enable certain

multiparty interference suits to be brought where the necessary litigants could not

otherwise be joined under the general jurisdiction and venue statutes."); <u>see also</u> <u>Chris</u>

<u>Laganas</u>, 221 F.2d at 882; <u>Bally Gaming</u>, 789 F. Supp. 2d at 43–44.

Because this Court agrees with <u>Montecatini</u>'s rationale and its conclusion, it

concludes that § 1071(b)(4) does not deprive it of "jurisdiction."

**B.  Personal Jurisdiction**

Defendants contend next that this Court lacks personal jurisdiction because their

contacts with the state of Washington are "so remote that they provide no basis for

general jurisdiction" or specific jurisdiction.  Plaintiff's Complaint and declarations

flatly contradict Defendants' position.

In order to determine whether personal jurisdiction exists over an out-of-state

defendant, this Court must make two inquiries:  (1) whether a forum state's long-arm

statute permits the assertion of jurisdiction and (2) whether assertion of personal

jurisdiction violates federal due process. Pebble Beach Co. v. Caddy, 453 F.3d 1151,

1155 (9th Cir. 2006). "Where, as here, the district court receives only written

submissions, the plaintiff need only make a prima facie showing of jurisdiction to avoid

the defendant's motion to dismiss." Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d

1007, 1019 (9th Cir. 2002). "[U]ncontroverted allegations in [Plaintiff's] complaint

must be taken as true, and conflicts between the facts contained in the parties'

affidavits must be resolved in [Plaintiff's] favor." Id.

In this case, the Court's inquiry is simplified by the fact that Washington's

"long-arm statute extends jurisdiction to the limit[s] of federal due process." Chan v.

Society Expeditions, Inc., 39 F.3d 1398, 1405 (9th Cir. 1994) (citations omitted).

Thus, the Court need only determine whether "the exercise of jurisdiction [would]

comport with federal due process," i.e., whether general or specific personal

jurisdiction exists. Id. at 1405–06.

For specific jurisdiction to exist, "a defendant . . . must have 'minimum

contacts' with the forum state such that the assertion of jurisdiction 'does not offend

traditional notions of fair play and substantial justice.'" Pebble Beach, 453 F.3d at

1155 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 315 (1945)). "This

'minimum contacts' test is satisfied" in the Ninth Circuit when:

> (1) the defendant has performed some act or consummated some
> transaction within the forum or otherwise purposefully availed
> himself of the privileges of conducting activities in the forum, (2) the
> claim arises out of or results from the defendant's forum-related
> activities, and (3) the exercise of jurisdiction is reasonable.

Id. "The plaintiff bears the burden of satisfying the first two prongs of the test."

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). "If the

plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in

the forum state." Id. But "[i]f the plaintiff succeeds in satisfying both of the first two

ORDER VACATING DEFAULT, DENYING MOTION TO DISMISS - 7

prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Id.

Turning to the facts of this case, the Court finds that Plaintiff has more than met its initial burden.  The first prong requires only that Defendants "consummate[d] some transaction with the forum or resident thereof; or perform[ed] some act by which [they] purposefully avail[ed] [themselves] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." Schwarzenegger, 374 F.3d at 802.  And, it is undisputed that on March 18, 2004, Defendants entered into a contract with Plaintiff for the manufacture and sale of Defendants' "Dushesse, extra-cider, and estragon drinks," Complaint (Dkt. # 1) at ¶ 12, and that, in performance of the contract, they manufactured thousands of their drinks for delivery to the state of Washington, Dkt. # 19.

There is also no dispute that pursuant to this contract, Plaintiff provided Defendants with the English-language labels containing the specific drink names and stylized designs that form the crux of each of its claims.  Compare id., with id. at ¶¶ 28–34 (Claim 1), id. at ¶ 36 (Claim 2) ("Defendants' unauthorized use of design marks that copy identical or confusingly similar distinctive elements of Vosk's Trademarks in connection with the same goods in the United States constitutes a false designation of origin, false or misleading description and/or false and misleading representation."), and id. at ¶ 41 ("Defendants' unauthorized use of design marks that copy identical or confusingly similar elements of Vosk's Trademarks in connection with the same goods in the United States constitutes an unfair method of competition and an unfair trade practice . . . .").  This satisfies the second prong.  See Action Embroidery Corp. v. Atlantic Embroidery, Inc. 368 F.3d 1174, 1180 (9th Cir. 2004) ("[A] court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have

1   personal jurisdiction.").

2          In arguing against jurisdiction, Defendants rely heavily on a single fact:  that all

3   of their contacts with Plaintiff occurred in Russia.  That is irrelevant, however.

4   Regardless of where documents were signed or hands were shook, Defendants <u>entered</u>

5   <u>into a contract with Plaintiff knowing that Plaintiff was a Washington resident and then</u>

6   <u>purposefully directed their products to this state</u>.  Reply (Dkt. # 23) at 9–10.  Nothing

7   more is required.  <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297–98

8   (1980) ("The forum State does not exceed its powers under the Due Process Clause if it

9   asserts personal jurisdiction over a corporation that delivers its products into the stream

10  of commerce with the expectation that they will be purchased by consumers in the

    forum State.")[6]; <u>accord</u> <u>Schwarzenegger</u>, 374 F.3d at 802–03.

11         Thus, in sum, this Court finds that Defendants "purposefully avail[ed]

12  [themselves] of the privilege of conducting activities within" this state both when they

13  contracted with Plaintiff and when they "deliver[ed] [their] products into the stream of

14  commerce with the expectation that they w[ould] be purchased by consumers" in

15  Washington.  <u>World-Wide Volkswagen</u>, 444 U.S. at 297.  Accordingly, they had "clear

16  notice that [they were] subject to suit" here and have failed to demonstrate that this

17  Court's exercise of jurisdiction would be unreasonable.  <u>Id.</u> ("Hence if the sale of a

18  product of a manufacturer or distributor such as Audi or Volkswagen is not simply an

19  isolated occurrence, but arises from the efforts of the manufacturer or distributor to

20  serve directly or indirectly, the market for its product in other States, <u>it is not</u>

    <u>unreasonable to subject it to suit in one of those States</u> . . . ." (emphasis added)).[7]

21

22         [6] Defendants' reliance on Incoterms is immaterial to this Court's due process inquiry.
    Regardless of when Defendants' risk of loss or delivery obligations terminated, the record now
23  before the Court makes clear that they were aware of where their goods were to be delivered
    and consumed.  Moreover, Incoterms have no bearing on the fact that Defendants contracted
24  directly with a Washington resident.

25         [7] Because the Court finds that specific jurisdiction exists, it does not consider whether
    general jurisdiction also exists.

26  ORDER VACATING DEFAULT, DENYING MOTION TO DISMISS - 9

**C. Vacatur of the Default**

Finally, the Court reaches the issue of vacatur of its entry of default.  It exercises its discretion to vacate so that this case may be decided on the merits.

Federal Rule of Civil Procedure 55(c) provides that a court may set aside a default for "good cause shown."  Franchise Holding II, LLC. v. Huntington Rests. Group, Inc., 375 F.3d 922, 925 (9th Cir. 2004).  In considering whether that standard has been met, "the district court should consider whether:  (1) the plaintiff would be prejudiced by setting aside the default; (2) the defendant has a meritorious defense; and, (3) the defendant's culpable conduct led to the default."  See O'Connor v. Nevada, 27 F.3d 357, 264 (9th Cir. 1994); Franchise Holding, 375 F.3d at 925.  Notably, though, the moving party need not establish each of these factors.  Instead, it need only demonstrate that the balance of these factors favors vacatur.  See TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 696 (9th Cir. 2001).

In this case, Plaintiff has not identified any prejudice that might result were the Court to vacate its entry of default.  And, while the Court disagrees with each of Defendants' "jurisdiction"-based defenses, it cannot ignore that Defendants were the victors before the TTAB.  Accordingly, the Court must assume that they have a meritorious defense to the merits of Plaintiff's claims.

Frankly, the only thing that gives the Court any pause whatsoever is the fact that Defendants specially appeared two days prior to the entry of default and yet did not move the Court for leave to respond to Plaintiff's motion.  Still, given the service complexities at issue in this case, the Court cannot conclude that this minor delay amounted to culpable conduct of the kind that would preclude vacatur.  Id. at 697–98 ("[W]e have typically held that a defendant's conduct was culpable . . . where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond."); see id. at 696 ("[T]his Court has emphasized that [default] judgments are 'appropriate only in extreme circumstances; a case should, whenever

ORDER VACATING DEFAULT, DENYING MOTION TO DISMISS - 10

possible, be decided on the merits.'" (citation omitted)); O'Connor, 27 F.3d at 363
(Courts should "resolve[ ] all doubt in favor of setting aside the entry of default and
deciding the case on its merits.").

In sum, the Court exercises its considerable discretion, Mendoza v. Wight
Vineyard Mgmt., 783 F.2d 941, 945 (9th Cir. 1986), to vacate its entry of default.

## III.  CONCLUSION

For all of the foregoing reasons, Defendants' "Motion to Set Aside Order
Granting Plaintiff's *Ex Parte* Motion for Leave to Serve Defendants by Alternate
Means, Quash Service and Vacate Default" (Dkt. # 16) is GRANTED IN PART.  The
Court VACATES its entry of default (Dkt. # 14), but otherwise DENIES as moot
Defendants' remaining requests.  In addition, the Court DENIES Defendants' "Motion
to Dismiss for Lack of Jurisdiction" (Dkt. # 15).  Section 1071(b)(4) does not deprive
this Court of jurisdiction, and Defendants' many contacts with this state and its
resident, Plaintiff, allows the Court to exercise jurisdiction over the identified claims.


DATED this 27th day of March, 2012.


*Mark S Lasnik*
Robert S. Lasnik
United States District Judge