UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VOSK INTERNATIONAL CO.,<br><br>    Plaintiff,<br><br>    v.<br><br>ZAO GRUPPA PREDPRIYATIJ OST AND ZAO OST AQUA,<br><br>    Defendants. | Case No. C11-1488RSL<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on a "Motion for Summary Judgment " filed by Intervenor-Defendant Ltd. "Aqua-Life" ("Aqua Life") (Dkt. # 61). Plaintiff Vosk International Co. ("Vosk") appeals the U.S. Patent and Trademark Office Trademark Trial and Appeal Board's ("TTAB") refusal to grant Vosk's applications to register three marks. The TTAB sustained Defendants Zao Gruppa Predpriyatij Ost's and Zao Ost Aqua's (collectively "Zao") oppositions to the applications based on their allegations of prior use and their contention that use of Vosk's marks on the identified goods were likely to cause confusion.

In addition to seeking review of the TTAB's decision, Vosk asserts claims of false designation of origin under the Lanham Act and unfair competition under the Washington Consumer Protection Act ("CPA"). Aqua-Life, the successor-in-interest to Zao's business and the owner of the three marks at issue, intervened and asserts various

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 1

trademark and unfair competition claims.  Aqua-Life now seeks summary judgment affirming the TTAB's decision and dismissing Vosk's additional claims.

Having considered the parties' memoranda, supporting documents, the arguments made during the hearing on September 27, 2013, and the remainder of the record, the Court finds as follows:

## I. BACKGROUND

In March 2004, Zao, a now dissolved Russian beverage manufacturing and distribution company, and Vosk, a Washington beverage importer and distributor, entered into a contract, the terms of which provided that Zao would ship its beverages, DUCHESSE, ESTRAGON, and EXTRA CIDER with labels shown below, to Vosk and Vosk would import Zao's products and sell them in the United States. Dkt. # 66 at 3;

  

Dkt. # 1-2 at 3.

The parties' original agreement was revised and superseded by another agreement in September 2004. Dkt. # 66 at 3; Dkt. # 1-2 at 3. By spring 2005, the parties' relationship had soured and they terminated the contract. Dkt. # 1-2 at 37.

In September 2004, Vosk filed applications to register the following three marks:

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 2

Dkt. # 66-4 at 2-3; Dkt. # 66-5 at 2-3; Dkt. # 66-6 at 2-3; Dkt. # 1-2 at 2. Zao opposed the registration of Vosk's marks based on a likelihood of confusion. Dkt. # 1-2 at 2. In March 2005, Zao filed trademark applications to register its marks. Id. at 37-38.

In 2010, while Vosk's applications were pending before the TTAB,[1] Zao dissolved and assigned its common law rights to the marks to its successor-in-interest, Aqua-Life. Dkt. # 66-11 at 6; Dkt. # 62-7 at 1-3. The TTAB sustained Zao's oppositions and refused to register Vosk's marks in August 2011. Dkt. # 1-2. Nearly two years later, Aqua-Life recorded the assignment of trademarks from Zao with the U.S. Patent and Trademark Office ("PTO"). Dkt. # 62-7 at 1-2.

## II. DISCUSSION

**A. Summary Judgment**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, the records show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate, by affidavits, depositions, answers

---

[1] Zao's applications were conditionally denied due to Vosk's earlier applications for registration. Dkt. # 1-2 at 37.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 3

to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Id.

**B. Standard of Review**

Under the Lanham Act, an applicant for registration of a mark that is dissatisfied with a final decision by the TTAB may seek review of that decision by the Federal Circuit on a closed record of the TTAB proceedings, 15 U.S.C. § 1071(a)(4), or it may seek review by the district court with an opportunity to present additional evidence and raise additional claims, 15 U.S.C. § 1071(b)(1). In the latter situation, the district court acts as an appellate reviewer of the facts determined by the TTAB and a fact-finder based on new evidence introduced. 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 21:20 (4th ed.).

In Dickinson v. Zurko, the Supreme Court held that the Administrative Procedure Act's standards governing judicial review applies to the Federal Circuit's review of findings of fact by the PTO. 527 U.S. 150, 165 (1999). Applying Zurko, the Federal Circuit determined that the TTAB's findings of fact "will be upheld unless they are unsupported by substantial evidence." On-Line Careline, Inc. v. Am. Online, Inc., 229

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 4

F.3d 1080, 1085 (Fed. Cir. 2000).  This standard of review is applied regardless of whether review is sought in the Federal Circuit or in the district court.  CAE, Inc. v. Clean Air Eng'g, Inc., 267 F.3d 660, 675 n.9 (7th Cir. 2001); 3 McCarthy § 21:22.50.

To apply the substantial evidence standard, the Court must ask "whether a reasonable person might find that the evidentiary record supports the agency's conclusion."  On-Line Careline, Inc., 229 F.3d at 1085.  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  In re Gartside, 203 F.3d 1305, 1312 (Fed. Cir. 2000).  When this standard of review is applied in the context of a motion for summary judgment, the district court applies a deferential standard of review to the TTAB's findings and views new evidence in the light most favorable to the nonmoving party.  Bd. of Regents of Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc., 653 F.3d 448, 452 (7th Cir. 2011).  Thus, Vosk, as the non-moving party, must identify compelling facts that were not brought to the TTAB's attention that are enough when viewed in the light most favorable to defeat summary judgment.  Id.

Unlike the TTAB's findings of fact, its conclusions of law are reviewed de novo. In re Pacer Tech., 338 F.3d 1348, 1349 (Fed. Cir. 2003).

**C.  Vosk's Motions to Strike**

As a preliminary matter, Vosk asks the Court to strike the declaration of Tatiana Aparshina and the exhibits attached, dkt. # 65 at 25, as well as the declaration of Melvin Simburg and exhibits, dkt. # 75 at 1.  Vosk contends that Aqua-Life did not disclose Ms. Aparshina as a potential witness and therefore, the Court should strike her declaration under Rule 37 of the Federal Rules of Civil Procedure.  Dkt. # 65 at 25-26.  Aqua-Life does not dispute that it did not disclose Ms. Aparshina as a witness, but instead argues that her declaration summarizes documents previously introduced during the TTAB

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 5

proceedings and it does not have the burden of proof to establish facts contrary to the TTAB's findings. Dkt. # 71 at 14.

The Court DENIES the motion to strike Ms. Aparshina's declaration as essentially moot because the Court does not rely on her declaration for its ruling. Rather, the Court relies entirely on the undisputed facts and the unchallenged findings of fact by the TTAB. Vosk's arguments regarding the documents attached to Ms. Aparshina's declaration are equally unavailing. At summary judgment stage, "a party does not necessarily have to produce evidence in a form that would be admissible at trial." Block v. City of L.A., 253 F.3d 410, 418-19 (9th Cir. 2001). A party need only present evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The Court finds that the exhibits attached to Ms. Aparshina's declaration could be properly authenticated at trial and therefore, has considered it.

The Court also DENIES the motion to strike Mr. Simburg's declaration and the exhibits attached as moot for the same reason it denies Vosk's motion to strike Ms. Aparshina's declaration. The Court does not rely on this declaration or the exhibits attached to it in reaching its decision.[2]

**D. Findings of the TTAB**

During the TTAB proceedings, Zao presented evidence consisting of business records and testimony that it exported beverages with its marks to the United States as early as 2001. Dkt. # 2-1 at 35. Edward Tkach, President of B & B International Connections, Inc., testified that he and his company began importing these products with the marks in 2001 and they continued importing Zao's products until 2004. Id. at 36. Then, in March 2004, Zao and Vosk entered into an agreement, which was later modified and superseded by another agreement in September 2004, the terms of which

---

[2] The Court also has not considered the late submissions by Aqua-Life, filed the day before the hearing on this motion. Dkt. # 92, 93.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 6

provided that Vosk would purchase Zao's products and re-sell them in the United Sates. Id. at 36.  During the course of their relationship, Vosk worked with Zao to alter the labels to include the English translations and to make a few other minor alterations to comply with U.S. law.  Id. at 36-37.  As the TTAB noted, "these are the types of labeling changes one might expect an importer or distributor to recommend to its foreign manufacturer based on its better understanding the law and custom of the domestic market."  Id. at 37 n.41.  The parties ceased working together in spring 2005.  Id.

**E. TTAB's Conclusions of Law[3]**

Based on the findings set forth above, the TTAB concluded that Zao "clearly established [its] priority of use of the marks in connection with the involved goods."  Id. at 45.  This Court agrees.  Affording the proper deference to the TTAB's factual findings, the Court finds that the evidence shows that Zao had a proprietary interest in the subject marks several years before Vosk filed its intent to use applications in September 2004.  Furthermore, Vosk does not dispute that Zao distributed its products containing the relevant marks in the United States before Vosk filed its intent to use applications.  Rather, as explained below, Vosk argues that Zao's distribution was unlawful, thereby invalidating Zao's priority date.

As before the TTAB, there does not appear to be any dispute that the parties' marks present a likelihood of confusion.  See Dkt. # 2-1 at 46; Dkt. # 61; Dkt. # 65. Nonetheless, analyzing the factors established in AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979), (1) strength of the mark; (2) proximity or relatedness

---

[3] Despite Vosk's request to do so, the Court may not review the TTAB's denial of Vosk's motion for summary judgment.  "An order denying a motion for summary judgment is interlocutory, non-final, and non-appealable."  Parker Bros. v. Tuxedo Monopoly, Inc., 757 F.2d 254, 255 (Fed. Cir. 1985); accord Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd., 517 F.Supp.2d 1, 7-8 (D.D.C. 2007).  That rule is applicable to decisions by the TTAB.  Parker Bros., 757 F.2d at 255.  Therefore, the Court does not consider Vosk's claims on review that the TTAB erred in denying its motion for summary judgment.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 7

of the goods or services; (3) similarity of sight, sound and meaning; (4) evidence of actual confusion; (5) marketing channels; (6) type of goods and purchaser care; (7) intent; and (8) likelihood of expansion in product lines, the Court affirms the TTAB's finding of a likelihood of confusion. See Brookfield Commc'ns, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1053-54 (9th Cir. 1999) ("Some factors are much more important than others, and the relative importance of each individual factor will be case specific . . . it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of factors.").

The Court finds that the subject marks are essentially identical. They are comprised of the same words, written in the same font, surrounded by virtually the same shapes in the same design. The similarity factor therefore weighs heavily in favor of a finding of likelihood of confusion. Id. at 1054 ("The similarity of the marks will always be an important factor."). In addition, both Aqua-Life and Zao's marks are used to label the same type of non-alcoholic, Russian beverages. See Dkt. # 1-2 at 52-53. Based on the nearly identical nature of the marks and their use for the same products in the same market, the Court concludes that there is a likelihood of confusion. Brookfield, 174 F.3d at 1056 ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course.").

Finally, the TTAB considered and rejected Vosk's argument that Zao could not establish trademark rights because it did not comply with the Food and Drug Administration's ("FDA") labeling requirements and its Estragon beverage contained an ingredient prohibit by the FDA. Dkt. # 1-2 at 54- 62. Although Vosk alleged that Zao violated a variety of FDA requirements before 2004, Vosk did not present any evidence that the FDA or any other authority actually determined there to be a violation before 2004. Dkt. # 2-1 at 60-61. Absent any finding by the TTAB that the FDA determined

Zao to be noncompliant before September 2004, the Court affirms the TTAB's denial of Vosk's affirmative defense.

The Ninth Circuit's holding in CreAgri, Inc. v. USANA Health Scis., Inc., 474 F.3d 626 (9th Cir. 2007) does not alter the Court's analysis. Unlike the circumstances present here, in CreAgri, Inc., it was undisputed that the manufacturer's labels were not in compliance with U.S. regulations governing labeling requirements regarding the ingredients of a dietary supplement and therefore, the manufacturer's use was not lawful for determining priority of use. 474 F.3d at 630-31. In contrast, Vosk failed to present any evidence that Zao's use of its marks before September 2004 was in fact unlawful. Absent such evidence, this Court cannot conclude that the alleged labeling defects were sufficiently related to the marks to justify revoking Aqua-Life's common-law rights to the marks. The Court also affirms the TTAB's finding that abrogating Zao's rights, and now Aqua-Life's rights, to the marks based on unsupported allegations of labeling defects would not reflect the PTO's longstanding policy favoring proportionate penalties. See Dkt. # 1-2 at 61-62.

**F.  New Evidence and Argument**s

In this appeal, Vosk presents evidence and arguments not considered by the TTAB. At this stage, the primary inquiry is whether Vosk has presented sufficient evidence that, when viewed in the light most favorable to Vosk and considered with the TTAB's findings of fact, creates a genuine issue of material fact precluding summary judgment in Aqua-Life's favor. Phoenix Int'l Software, Inc., 653 F.3d at 452. Vosk contends that three genuine issues of fact preclude granting Aqua-Life's motion: (1) whether Zao's trademark assignment to Aqua-Life is authentic; (2) whether Zao's prior use of the marks was lawful; and (3) whether Vosk was Zao's distributor or the actual

owner of the subject marks. Dkt. # 65 at 13-25. The Court addresses each of Vosk's arguments in turn.

**1. Zao's Assignment of Rights to Aqua-Life**

Vosk argues that Aqua-Life and Zao backdated the trademark assignment to reflect a date preceding Zao's dissolution to avoid a finding that the relevant marks had been abandoned. Dkt. # 62-7 at 13. To support this contention, Vosk relies on the two-year delay in recording the assignment with the PTO and Zao's alleged history of committing forgery by reproducing the signature of Vosk's owner on four documents. Id. at 13-15. These arguments are not persuasive.

Contrary to Vosk's suggestion, Aqua-Life was not required to join or seek substitution in the TTAB proceedings. A TTAB decision is binding on an assignee regardless of whether there is a formal substitution of the party during the TTAB proceedings. TBMP 512.01; see also Hamilton Burr Publ'g Co. v. E. W. Communc'ns, Inc., 216 U.S.P.Q. 802, 803, n.1 (TTAB 1982) (noting that if the entity opposing to the registration of a mark has transferred its rights to the mark, the assignor may continue the action and the TTAB's decision will be binding upon the assignee). Furthermore, even if Zao reproduced Mr. Voskanyan's signatures on drafts of the parties' contracts without authorization, that fact alone is insufficient to create a genuine issue of fact regarding whether the signatures and the date on a separate document are authentic.[4] Vosk has not presented any evidence suggesting that the assignment of rights is not authentic.

---

[4] The Court notes that whether Mr. Voskanyan's signatures on the contract drafts are replicas is not a genuine issue of material fact precluding summary judgment as neither party disputes the material terms of the contracts.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 10

**2.  Zao's Alleged Unlawful Prior Use**

Vosk next contends that Zao's prior use of the marks was not lawful use in commerce and therefore, Aqua-Life cannot establish priority of use of the marks. Although Vosk presented similar arguments during the TTAB proceeding, dkt. # 1-2 at 54, Vosk has submitted new evidence in this appeal, which requires this Court to review the evidence de novo and in the light most favorable to Vosk. Phoenix Int'l Software, Inc., 653 F.3d at 452.

Vosk argues that Zao's earlier use of the mark associated with one beverage, Estragon, was not lawful because it contained a color additive prohibited by the FDA.[5] Vosk relies on the FDA's 2005 determination that one shipment of Estragon contained Patent Blue V in violation of 21 U.S.C. § 379e(a). Dkt. # 66-7. Vosk's new evidence includes a spreadsheet Vosk received through a records request from the FDA pursuant to the Freedom of Information Act. Dkt. # 66 ¶ 21; Dkt. # 68-1. This spreadsheet states that the FDA found an unspecified color additive in Estragon in 2008 that is considered "unsafe" and prohibited by a federal regulation. Id. at 5. Vosk also relies on expert testimony from Irene Gomez, a former FDA Director of Import Operations for Los Angeles, California. Dkt. # 68. Viewing the new evidence in the light most favorable to Vosk, the Court finds that Vosk fails to present a genuine issue of material fact regarding the legality of Zao's prior use of the marks.

The reliability of expert testimony is judged not on the substance of the opinions offered, but on the methods employed in developing those opinions. Daubert v. Merrill Dow. Pharm., Inc., 509 U.S. 579, 594-95 (1993). In general, the expert's opinion must be based on principles, techniques, or theories that are generally accepted in his or her

---

[5] There is no allegation or evidence that Zao's two other products, Duchesse, and Extra Cider, contained any unlawful ingredient or that their importation was questioned by a federal authority.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 11

profession and must reflect something more than subjective belief and/or unsupported speculation. Id. at 590. The testimony must also be "helpful," such that a valid connection between the opinion offered and the issues of the case exists. Id. at 591-92.

Based on the FDA's determination that Patent Blue V was present in one shipment of Estragon in 2005 and the FDA's finding that an unsafe color additive was present in Estragon 2008, Ms. Gomez opines that all of Zao's shipments of Estragon through 2008 contained Patent Blue V. Dkt. # 68 ¶ 9. This opinion is based on a another opinion that "manufacturers typically do not formulate products that initially comply with FDA regulations and then reformulate such products in a way that violates such regulations." Id. Although Ms. Gomez has more than thirty years of experience in FDA import operations and procedures, she lacks sufficient knowledge or experience to qualify as an expert in the proper subject matter. Ms. Gomez is not and does not proclaim to be an expert in the field of beverage manufacturing and her opinions are beyond the scope of her FDA import expertise.

Additionally, Ms. Gomez's opinion is not the product of reliable principles or methods. It is not entirely clear what, if anything, Ms. Gomez relied on to reach her conclusion. Even assuming that the color additive found in Estragon in 2008 was in fact Patent Blue V, there is nothing in the record or her opinion that suggests its presence in Estragon before 2005. There is simply too large an analytical gap between the facts and her conclusion that all shipments of Estragon before 2005 contained Patent Blue V.

With respect to Zao's alleged failure to comply with FDA labeling requirements in 2008, Ms. Gomez's opinion regarding Zao's use of Russian writing on its labels is not helpful to the trier of fact as required under Daubert. Ms. Gomez opines generally that if Zao's imported beverages contained labels written in Russian those beverages did not lawfully enter U.S. commerce. Dkt. # 68 ¶ 11. Ms. Gomez relies on the same FDA

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 12

spreadsheet discussed earlier, which also indicates that in 2008, Zao attempted to import beverages containing labels that did not comply with certain FDA regulations, including one regulation requiring that labels be written in English. Id. ¶ 7; Dkt. # 68-1. Her conclusion that labels written in Russian violate FDA regulations provides no additional insight beyond the document on which she relies. Furthermore, neither Ms. Gomez's opinion nor the FDA spreadsheet addresses the relevant time period, before September 2004. Id. At best, this evidence indicates that Zao's labels were not compliant long after Vosk's priority date. Vosk therefore fails to present sufficient admissible evidence to create a genuine issue of material fact regarding whether Zao's prior use of the marks in commerce was lawful.[6]

### 3. Vosk's Business Relationship with Zao

Finally, Vosk contends that whether Vosk was Zao's "distributor" in 2004 and early 2005 is an issue of material fact precluding summary judgment. Dkt. # 65 at 23. However, the precise nature of Vosk's relationship with Zao is not material. Vosk does not dispute that Zao, through another distributer, imported and sold the products with its marks before 2004. Therefore, whether Vosk acted as Zao's distributor and agent or as a buyer and subsequent seller and owner of the marks in 2004 and 2005 is irrelevant to the determination of priority. Vosk does not contend that the marks Zao used before 2004 belonged to Vosk and thus, the dispute regarding ownership of the marks on the products sold as a result of the parties' contracts is not relevant. The Court therefore GRANTS Aqua-Life's motion for summary judgment and AFFIRMS the decision of the TTAB.

---

[6] Despite Vosk's request to strike Ms. Aparshina's declaration, dkt. # 65 at 25, Vosk relies on Ms. Aparshina's statements as admissions that Zao's use of the marks was unlawful before 2004, dkt. # 65 at 23. Vosk cannot have it both ways. As explained more fully above, the Court has not considered Ms. Aparshina's declaration in reaching its decision.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 13

**G. False Designation of Origin and Unfair Competition**

In its motion, Aqua-Life challenges Vosk's false designation of origin and unfair competition claims. Aqua-Life contends that as the senior user of the three marks at issue, it did not infringe and is not currently infringing on Vosk's rights under the Lanham Act and it has not violated the CPA. Dkt. # 61 at 10-11. Vosk offers nothing in response. In fact, Vosk's response does not even mention these claims. Nonetheless, the Court has conducted its own review of these claims and finds that these claims cannot survive summary judgment in light of its earlier ruling affirming the TTAB's decision. Therefore, the Court GRANTS Aqua-Life's motion with respect to Vosk's false designation of origin and unfair competition claims.

**H. Aqua-Life's Counterclaims.**

During oral argument, Aqua-Life informed the Court that should this Court grant its motion for summary judgment it would dismiss its counterclaims against Vosk. Because the Court has granted Aqua-Life's motion for summary judgment in its entirety, Aqua-Life's counterclaims are hereby DISMISSED.

### III.  CONCLUSION

For all of the foregoing reasons, the Court GRANTS Aqua-Life's motion for summary judgment (Dkt. # 61). The Clerk of the Court is directed to enter judgment in favor of Intervenor-Defendant Aqua-Life and against Plaintiff Vosk.

DATED this 9th day of October, 2013.

Robert S. Lasnik
United States District Judge

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 14